UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CALE HOWARD JONES, III,

     Plaintiff,

v.                               Case No: 8:19-cv-2962-T-30JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, Cale Howard Jones, III, seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Court recommends that the decision be affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on July 12, 2016. (Tr. 10, 145-46.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 61, 70.) Plaintiff then requested an administrative hearing. (Tr. 85-86.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 29-53.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 10-19.) Subsequently, Plaintiff requested

review from the Appeals Council, which the Appeals Council denied.  (Tr. 1-6.)
Plaintiff then timely filed a Complaint with this Court.  (Dkt. 1.)  The case is now ripe
for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1953, claimed disability beginning on June 10, 2015.
(Tr. 145.)  Plaintiff has a high school education.  (Tr. 17.)  Plaintiff's past relevant work
experience includes work as a house repairer, maintenance repairer, and parts driver.
(Tr. 17, 34-39, 43.)  Plaintiff alleged disability due to chronic pain and pancreatitis.
(Tr. 35, 155.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed
substantial gainful activity since June 10, 2015 the alleged onset date.  (Tr. 12.)  After
conducting a hearing and reviewing the evidence of record, the ALJ determined that
Plaintiff had the following severe impairments: pancreatitis and status post
cholecystectomy.   (Tr. 12.)   Notwithstanding the noted impairments, the ALJ
determined that Plaintiff did not have an impairment or combination of impairments
that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,
Subpart P, Appendix 1.  (Tr. 14.)  The ALJ then concluded that Plaintiff retained a
residual functional capacity ("RFC") to

> lift up to 20 pounds occasionally and lift and carry up to 10
> pounds frequently; stand and walk for about 6 hours and sit
> for up to 6 hours in an 8-hour workday with normal and
> customary breaks.  The claimant should avoid climbing
> ropes and scaffolds. The claimant can occasionally climb
> ladders and stairs and frequently navigate ramps, and stoop,
> kneel, crouch, and crawl frequently. The claimant can

> frequently reach, handle, and finger. The claimant needs to avoid concentrated, that is frequent or more exposure to extreme cold and extreme heat, and excessive vibration. The claimant should avoid concentrated use of hazardous industrial machinery and unprotected heights (20 CFR 404.1567(b)).

(Tr. 14.)

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 15.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 17.) Given Plaintiff's background and RFC, however, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as order filler, service attendant, and hardware assembler. (Tr. 18.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 18-19.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result

in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) substantial evidence does not support the ALJ's finding at step five that Plaintiff's work skills were transferable to other occupations with jobs that existed in significant numbers in the national economy; and (2) the ALJ erred in failing to give deference to the opinion of Plaintiff's treating physician.  For the reasons that follow, neither of these contentions warrant reversal.

### A. Skill Transferability

Plaintiff first argues that substantial evidence does not support the ALJ's finding that Plaintiff's skills from his past relevant work were transferable to other occupations with jobs that exist in significant numbers in the national economy.  (Tr. 14 at 2-7.) Specifically, Plaintiff argues that the VE was wrong in concluding that Plaintiff's acquired work skills from his past relevant work as a house repairer, maintenance repairer, and parts driver were transferrable to the jobs of order filler, service attendant, and hardware assembler.  (*Id.* at 5-7.)  In response, the Commissioner argues that the DOT descriptions of Plaintiff's past relevant work reflect skills that are shared with the occupations the VE testified Plaintiff could perform.  (Dkt. 15 at 7-10.)  Thus, the Commissioner asserts that the VE's testimony represents substantial evidence in support of the ALJ's finding at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy.  (*Id.*)

If the claimant cannot perform the tasks required of his or her prior work, the burden shifts to the Commissioner at step five to show the claimant can do other work

in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a); *Jones*, 190 F.3d at 1228. The regulations discuss how the agency determines whether skills are transferrable:

> (d) Skills that can be used in other work (transferability)—
>
> (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semiskilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.
>
> (2) How we determine skills that can be transferred to other jobs. Transferability is most probable and meaningful among jobs in which—
>
>> (i) The same or a lesser degree of skill is required;
>>
>> (ii) The same or similar tools and machines are used; and
>>
>> (iii) The same or similar raw materials, products, processes, or services are involved.

20 C.F.R. § 404.1568(d). The regulations further instruct there are "degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs. A complete similarity of all three factors is not necessary for transferability." Id. § 1568(d)(3).

Relevant here, the regulations specifically address transferability of skills for persons of advanced age and an RFC of light work:

> If you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to

> other work unless you have skills that you can transfer to
> other skilled or semiskilled work (or you have recently
> completed education which provides for direct entry into
> skilled work) that you can do despite your impairment(s).
> We will decide if you have transferable skills as
> follows. . . . If you are closely approaching retirement age
> (age 60 or older) and you have a severe impairment(s) that
> limits you to no more than light work, we will find that you
> have skills that are transferable to skilled or semiskilled light
> work only if the light work is so similar to your previous
> work that you would need to make very little, if any,
> vocational adjustment in terms of tools, work processes,
> work settings, or the industry. . .

*Id.* § 404.1568(d)(4) (emphasis added).

Social Security Ruling ("SSR") 82-41 (1982 WL 31389) provides further guidance regarding transferability of skills.   SSR 82-41, at *5, provides that transferability is most probable and meaningful among the jobs in which the same or lesser degree of skill is required and that, generally, the greater the degree of acquired skills, the less difficulty an individual will experience in transferring skills to other jobs. SSR 82-41, at *5.  Social Security Ruling 82-41, at *7, moreover, requires the ALJ to make findings of fact and include them in the written decision.  More specifically, "when a finding is made that a claimant has transferable skills, the acquired skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited   . . . in the ALJ's decision."  *Id.*

Here, Plaintiff was 61 years old on the alleged onset date and would be considered a person of advanced age.  20 C.F.R. § 404.1568(d).  If a person is of advanced age and is limited to sedentary or light work, as was Plaintiff in this case, the Commissioner cannot find that the person can make an adjustment to other work

unless he has skills that can transfer to other skilled or semiskilled work. *Id.* § 404.1568(d)(4). If the individual has transferable skills, the skilled or semiskilled sedentary work must be so similar to the individual's previous work that very little, if any, vocational adjustment would have to be made in terms of tools, work processes, work settings or the industry. *Id.*

Here, substantial evidence supports the ALJ's finding Plaintiff could perform other work in the national economy based on the VE's testimony because the skills he acquired during his past relevant work are transferable to other semiskilled jobs. Using the hypothetical individual comprising all of Plaintiff's impairments, the ALJ asked the VE whether the individual could perform other work with little, if any, vocational adjustment. (Tr. 49.) According to the VE, Plaintiff acquired the skills of fabricating or repairing items of static or electrical function from his experience as a house repairer and maintenance repairer, such as home repairing and remodeling. (Tr. 36-39, 49.) The VE also testified that Plaintiff acquired skills of organizing material for storage or distribution from Plaintiff's work as a parts delivery driver. (Tr. 34-36, 49.)

The VE's testimony regarding the skills Plaintiff had acquired in his past relevant work is consistent with Plaintiff's testimony and with the DOT descriptions of Plaintiff's past work. Specifically, the DOT describes the work of the house repairer as follows:

> Repairs and remodels houses and small buildings, according to blueprints or oral instructions: Measures distances and marks reference points on existing structure to lay out work. Removes defective members, existing siding, sheathing, and trim, using pinch bar, portable power

saw, hammer, and other carpenter's handtools.  Cuts lumber to size and shape, using hand or portable power saw. Nails and screws new framework, sheathing, and trim in place.  Fills cracks and other defects in plaster or plasterboard with patching plaster, using trowel. Sands plaster patch after drying to match existing surface.  Paints interior and exterior surfaces to specified color and texture. Replaces or installs new electrical fixtures, plumbing hardware, and brickwork, using pliers, screwdrivers, wrenches, and trowel.

House Repairer, DOT No. 869.381-010, 1991 WL 687582 (G.P.O.)   The DOT description of the job of maintenance repairer states:

Repairs and maintains physical structures of commercial and industrial establishments, such as factories, office buildings, apartment houses, and logging and mining constructions, using handtools and power tools: Replaces defective electrical switches and other fixtures. Paints structures, and repairs woodwork with carpenter's tools. Repairs plumbing fixtures. Repairs plaster and lays brick. Builds sheds and other outbuildings.

Maintenance Repairer, Building, DOT No. 899.381-010, 1991 WL 687673 (G.P.O.)

Lastly, the DOT description of the job of truck driver, light (alternate title, parts driver) states:

Drives truck with capacity under 3 tons to transport materials in liquid or packaged form and personnel to and from specified destinations, such as railroad stations, plants, residences, offices, or within industrial yards: Verifies load against shipping papers. Drives truck to destination, applying knowledge of commercial driving regulations and roads in area. Prepares receipts for load picked up. Collects payment for goods delivered and for delivery charges. May maintain truck log according to state and federal regulations. May maintain telephone or radio contact with supervisor to receive delivery instructions. May drive truck equipped with public address system through city streets to broadcast announcements over system for advertising or

> publicity purposes. May load and unload truck. May inspect truck equipment and supplies, such as tires, lights, brakes, gas, oil, and water. May perform emergency roadside repairs, such as changing tires, installing light bulbs, fuses, tire chains, and spark plugs.

Truck Driver, Light, DOT No. 906.683-022, 1991 WL 687717 (G.P.O.)

The VE further testified that the skills Plaintiff had acquired from these jobs were transferable to a number of light jobs in the national economy. (Tr. 49-50.) Specifically, the VE testified that a person with Plaintiff's limitations would be able to perform the duties of an order filler, service establishment attendant, and hardware assembler. (Tr. 50.) The VE explained that these positions "would be possible for the individual without any kind of education," and that "[t]he training we would expect would not be outside of what we would really consider that for any new hire within the first 90-day period situation." (Tr. 50.)

The VE further noted that the "materials, products, [and] subject matter are similar in scope that would not represent a significant adjustment for the individual." (Tr. 50.) The ALJ then asked whether these positions would "represent anything more than a little adjustment?" (Tr. 50.) The VE responded, "Really no. The . . . duties, Your Honor, the materials, the products, subject matter, the . . . tasks . . . are all very similar to that of the past work." (Tr. 51.)

Whether an individual of advanced age (over age 55) has transferable skills "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). Transferability is most likely among jobs that require the same or a lesser degree of skill, utilize the same or

- 11 -

similar tools, and use the same or similar products, processes, or services. §§ 404.1568(d)(2), 416.968(d)(2).   Complete similarity among all these factors is not necessary for transferability.  §§ 404.1568(d)(3), 416.968(d)(3).

An ALJ relies on a VE once the claimant has proven he "cannot perform a full range of work at a given level of exertion." *Jones*, 190 F.3d at 1229.  The VE provides the ALJ with the additional data he needs to make a disability determination. *Id.* at 1230.  The VE's testimony "trumps" other sources of information with regard to skill level and alternative jobs. *Id.* at 1229–30.  Unless the VE is proven incorrect, the ALJ may rely on the VE's testimony. *See id.* at 1230.

In arguing that the VE was incorrect, Plaintiff relies on the Department of Labor's Materials, Productions, Subject Matter and Services ("MPSMS") codes and Work Field ("WF") codes contained in the Program Operations Manual System ("POMS"). (Dkt. 14 at 4-6.)  However, federal courts have rejected the argument that reliance on the WF and MPSMS codes is required. *See, e.g.*, *Engel v. Colvin*, No. SACV 14-01989-JEM, 2015 WL 6453081, at *5 (C.D. Cal. Oct. 23, 2015) ("Court decisions have rejected the notion that use of the [POMS] WF and MPSMS codes is required."). This is in part because unpublished internal policy statements, such as the MPSMS codes and WF codes, "are not binding law that impose judicially enforceable duties on the ALJ or this Court." *Id.* (citing *Lockwood v. Comm'r Soc. Sec.*, 616 F.3d 1068, 1072-73 (9th Cir. 2010)).  In addition, the Program Operations Manual System does not require a complete similarly of all factors considered in evaluating the degree of vocational adjustment required.  POMS DI 25015.17; § 404.1568(d)(3).   Thus,

Plaintiff's contentions do not establish that the VE was incorrect in concluding that Plaintiff possessed transferrable skills that would allow him to perform other jobs that exist in significant numbers in the national economy.

It is not the job of the Court to reweigh the VE's expert testimony for independent analysis, but rather to determine whether the ALJ had substantial evidence upon which to make his decision. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011). Here, the ALJ here satisfied the requirements of SSR 82-41 and § 1568(d). The ALJ explained that Plaintiff's past relevant work as a house repairer and maintenance repairer were skilled jobs, medium in exertional level, with a specific vocational preparation of 7. (Tr. 18.) The ALJ further explained that Plaintiff's past relevant work as a parts driver was semi-skilled, medium in exertional level, with a specific vocational preparation level of 3. (Tr. 18.) The alternative occupations identified by the VE—order filler (DOT 222.487-014), service attendant (DOT 369.477-014), and hardware assembler (DOT 763.684-042)—were each semi-skilled occupations and light in exertion with a specific vocational preparation level of 3. (Tr. 18, 50.)

This testimony by the VE, adopted by the ALJ, is sufficient to satisfy SSR 82-41 and Section 1568(d). The jobs the VE identified are not completely similar to Plaintiff's past work as a house repairer, maintenance repairer, or parts delivery driver. However, they require the same or a lesser degree of each skill Plaintiff acquired, utilize the same or similar tools, and use the same or similar products, processes, or services. *See* §§ 404.1568(d)(2), 416.968(d)(2). In the alternative jobs, Plaintiff would

have to use many of the same skills he had acquired as a repairer and maintenance delivery driver, including organizational skills, use of hand tools and power tools, and collection of payment and keeping of receipts.  Plaintiff's testimony before the ALJ shows that he had acquired the skills required to remodel homes, convenience stores, and gas stations, and that he had also worked as a parts delivery driver, obtaining his commercial driver's license.  (Tr. 35-40.)  Therefore, Plaintiff's skills are transferable because the method in which they would be used in the alternative jobs is sufficiently similar to how he used them in his past relevant work as a home repairer, maintenance repairer, and parts delivery driver.  *See, e.g.*, *Zimmer v. Comm'r of Soc. Sec.*, 211 F. App'x 819, 820–21 (11th Cir. 2006) (holding claimant's skills were transferable because the method in which they would be used in the alternative jobs was sufficiently similar to how claimant used them as a waiter).  Substantial evidence supports the ALJ's finding of transferable skills, and it is recommended that the ALJ's decision be affirmed regarding this issue.

## B.  Dr. Kutner's Opinion

Plaintiff further alleges that the ALJ did not establish good cause for rejecting the opinion of Morris Kutner, M.D., a treating internal medicine specialist.  The Court concludes that the ALJ properly discounted the opinion because it was inconsistent with and not supported by other evidence in the record.  (Tr. 17.)

A physician's statement reflecting judgments regarding the severity and nature of a claimant's impairments including the claimant's symptoms, diagnosis, and prognosis, RFC, and the claimant's physical and mental restrictions is an opinion that

requires the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel*, 631 F.3d at 1178–79. Without good cause, the ALJ should give a treating source's opinion "'substantial or considerable weight.'" *Id.* at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1140 (11th Cir. 1997)). There is good cause to discount a treating source's opinion "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004). If the ALJ chooses to disregard the treating physician's opinion, "the ALJ must clearly articulate its reasons." *Id.*; *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (stating "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence). Nevertheless, under the highly deferential substantial evidence standard, if the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it. *Bloodsworth*, 703 F.2d at 1239.

Here, Dr. Kutner completed a two-page medical source statement opining that Plaintiff has severe limitations in his ability to sit, stand, walk, lift/carry, push/pull, and focus or concentrate. (Tr. 513-14.) In particular, Dr. Kutner opined that Plaintiff could only sit up to 2 hours per day and stand/walk 1 hour per day. (Tr. 513.) The ALJ explicitly gave little weight to this opinion, stating that the assessed limitations were "very restrictive, and they are inconsistent with and not supported by the

evidence." (Tr. 17.)  The ALJ detailed his reasons for giving little weight to Dr.

Kutner's opinion, noting that it was inconsistent with Dr. Kutner's own records, was

not thorough and lacked detail, and was inconsistent with other record evidence. (Tr.

17.)

Substantial evidence supports the ALJ's decision to give little weight to Dr.

Kutner's June 2018 opinion.  First, as the ALJ noted, Dr. Kutner's treatment notes do

not explain his opinion, and his records predating the opinion do not include objective

medical findings to support his opinion. (Tr. 17, 408-26, 464-67, 513-514); *see also* 20

C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (providing that greater weight is given to

opinions that are supported by relevant evidence and are well explained).  In addition,

the ALJ further noted that Dr. Kutner's findings on physical examination generally

only included Plaintiff's subjective reports regarding his symptoms and did not record

any actual objective findings of functional limitations. (Tr. 17, 408-26, 464-67.)  *See,*

*e.g.*, *Sarli v. Berryhill*, No. 19-14673, 2020 WL 4036590, at *2 (11th Cir. July 17, 2020)

(recognizing that internal inconsistencies in treating physician's opinion and treatment

notes supported the ALJ's determination to accord partial weight to his testimony);

*Pettaway v. Astrue*, 376 F. App'x 889, 891 (11th Cir. 2010) (holding good cause

supported ALJ's decision not to give treating physician's opinion less weight where

the opinion "went against the balance of objective medical evidence and was based

mainly on [claimant]'s subjective complaints"); *Carter v. Comm'r of Soc. Sec.*, 411 F.

App's 295, 299 (11th Cir. 2011) (noting opinion was not entitled to deference where

opinion was based on subjective complaints, was conclusory, and was inconsistent with the doctor's own medical records).

Second, the ALJ noted that Dr. Kutner's opinion was not consistent with other record evidence. (Tr. 17.) Specifically, the ALJ noted that Plaintiff's treatment records from Lakeland Regional Cancer Center reported that Plaintiff's pain was well controlled with medication in October 2017. (Tr. 16, 484.) In addition, the ALJ noted that Plaintiff's treatment records from May 2018 reported that Plaintiff was doing well with no abdominal pain and only occasional feelings of "discomfort" in the epigastrum. (Tr. 17, 475.) The ALJ noted that this evidence was inconsistent with the severe limitations assessed in Dr. Kutner's medical source statement. (Tr. 17, 475.) "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the Commissioner] will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Saucier v. Comm'r, Soc. Sec. Admin.*, 552 F. App'x 926, 929 (11th Cir. 2014) (finding good cause existed to give treating physician's opinion less weight where opinions were inconsistent with evidence concerning claimant's activities and other medical opinions).

The ALJ also noted that Dr. Kutner's opinion was completed six months after Plaintiff's last date insured, and Dr. Kutner did not indicate to what time period the assessed limitations applied. (Tr. 17, 513-14.) Plaintiff must prove that he became disabled before the expiration of his disability insured status. *See* U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011). An ALJ *may* recontact a claimant's treating

physician if the ALJ decides that the evidence is insufficient to determine whether the claimant is disabled.  *See* 20 C.F.R. § 404.1520b(c)(1), (c)(3).  Here, the ALJ did not find that the evidence was insufficient to determine whether Plaintiff is disabled, and the ALJ was not required to recontact Dr. Kutner regarding an opinion to which the ALJ assigned little weight.

Lastly, the ALJ also assigned some weight to the opinion of the State agency reviewing consultant, Shakar Junejo, M.D. (Tr. 17.)  Plaintiff argues the ALJ erred in assigning some weight to Dr. Junejo's opinion while assigning little weight to Dr. Kutner's opinion. (Dkt. 14 at 9.)  Dr. Junejo, as a state agency medical consultant, is deemed an expert in the Social Security disability programs and his opinion was entitled to great weight if it was supported by the evidence in the record.  *See* 20 C.F.R. § 404.1527(e)(2)(ii); *see also Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012) (holding the ALJ properly gave significant weight to the opinion of the non-examining physician because it was consistent with the record evidence).  The ALJ articulated reasons for giving only some weight to Dr. Junejo's opinion. Specifically, the ALJ noted that the limitations assessed by Dr. Junejo were *less* restrictive than the RFC; the ALJ found more restrictive limitations than those proposed by Dr. Junejo were warranted based on the overall evidence and Plaintiff's testimony. (Tr. 16.)  However, the ALJ further noted that Dr. Junejo's opinion regarding Plaintiff's ability to stand and walk for six hours and sit for six hours in an eight-hour workday was consistent with the evidence, which did not indicate that Plaintiff had any difficulty standing or walking. (Tr. 16.)  As the ALJ reasoned, the

record does not contain evidence demonstrating Plaintiff had difficultly standing or walking.  In addition, as the Eleventh Circuit has noted, where an ALJ has properly discounted a treating physician's opinion, the ALJ is not prohibited from reaching a conclusion simply because a non-treating source also reached it.  *See Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012).  The Court finds the ALJ articulated reasons for assigning Dr. Junejo's opinion some weight, and substantial evidence in the record supports the ALJ's finding.

In sum, the ALJ articulated specific reasons, supported by substantial evidence, for giving little weight to Dr. Kutner's opinion.  *See Evans v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 521, 525 (11th Cir. 2014).  The ALJ properly considered all of the evidence in the record and reviewed both medical and non-medical evidence.  (Tr. 12-19.)  The inconsistencies noted between Dr. Kutner's opinion and the record as a whole constitute good cause to give the opinion less weight.  Thus, this Court may not disturb the ALJ's finding.  *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 F. App'x 438, 440 (11th Cir. 2011) ("As our limited review precludes us from reweighing the evidence, we will find no reversible error when the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, if those reasons are supported by substantial evidence."); *Carson v. Comm'r, Soc. Sec. Admin*, 300 F. App'x 741, 743 (11th Cir. 2008) ("Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, we do not disturb the ALJ's refusal to give the opinion controlling weight.").

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1.  The decision of the Commissioner be **AFFIRMED**.

2.  The Clerk of Court be directed to enter final judgment in favor of the

    Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on December 21, 2020.


_____

JULIE S. SNEED

UNITED STATES MAGISTRATE JUDGE


## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report

and Recommendation's factual findings and legal conclusions.  A party's failure to file

written objections waives that party's right to challenge on appeal any unobjected-to

factual finding or legal conclusion the district judge adopts from the Report and

Recommendation.  *See* 11th Cir. R. 3-1.


Copies furnished to:
The Honorable James S. Moody, Jr.
Counsel of Record